FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

2010 OCT -1  P 4: 16

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |
|---|---|
| U.S. FOODSERVICE, INC.,<br>9399 West Higgins Road<br>Suite 600<br>Rosemont, IL  60018 | )<br>)<br>)<br>)<br>) |
| Plaintiff, | ) |
| v. | ) |
| VICKI CUSICK<br>77 Carolina Drive<br>Heathsville, VA 22473, | )<br>)<br>) |
| JEFF CATTELL<br>15310 Moynoskie Ct.<br>Lanexa, VA 23089, | )<br>)<br>) |
| JENNIFER GOSSELIN<br>107 Fall E<br>Williamsburg, VA 23188, | )<br>)<br>) |
| NORMAGEAN HALL<br>120 Old Carriage Way<br>Williamsburg, VA 23188, | )<br>)<br>) |
| MARK MORENO<br>8105 Chelmsford Court<br>Williamsburg, VA 23188 | )<br>)<br>) |
| and | ) |
| JOHN SHACKLEY<br>4090 Dunbarton Circle<br>Williamsburg, VA 23188, | )<br>)<br>) |
| Defendants. | ) |

CIVIL ACTION NO. 1:10CV1101
TSE/IDD

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff U.S. Foodservice, Inc. ("USF") brings this action against Defendants Vicki Cusick ("Ms. Cusick"), Jeff Cattell ("Mr. Cattell"), Jennifer Gosselin ("Ms. Gosselin"), Normagean Hall ("Ms. Hall"), Mark Moreno ("Mr. Moreno") and John Shackley ("Mr. Shackley") (collectively "Defendants"), all of whom are former employees of USF who currently work for a competitor, Performance Food Group ("PFG") and who, in clear violation of their executed Non-Solicitation and Non-Disclosure Agreements ("Agreement"), are soliciting business for PFG from their former USF accounts and, upon information and belief, are using USF's confidential pricing information to pursue these accounts, all to the detriment of USF. Furthermore, Mr. Cattell and Mr. Moreno have violated their Agreements prohibiting them from soliciting USF employees. If left unchecked, these wrongful actions will continue to cause serious and irreparable harm to USF in the form of lost goodwill, harm to its business relationships and loss of the value of its confidential information and trade secrets. Moreover, these wrongful actions are causing and will continue to cause great harm to USF. Accordingly, USF brings this action against its former employees and seeks injunctive and other relief based on Defendants' breach of contract, misappropriation of trade secrets, tortious interference, conversion and a breach of their common law duties.

## PARTIES

1.  USF is a Delaware corporation with its principal place of business in Illinois.

2.  USF operates in this district with sales and distribution. USF is, and, upon information and belief, at all times mentioned was, authorized to do business in Virginia.

3.  Upon information and belief, Ms. Cusick is a resident of Virginia and was employed by USF as a Territory Manager in Virginia from October 9, 2000 until her departure on

September 12, 2010, and is now employed by PFG.

4.  Upon information and belief, Mr. Cattell is a resident of Virginia and was employed by USF as a District Sales Manager in Virginia from April 14, 1997 until his departure on January 5, 2010, and is now employed by PFG.

5.  Upon information and belief, Ms. Gosselin is a resident of Virginia and was employed by USF as a Territory Manager in Virginia from May 12, 2003 until her departure on September 3, 2010, and is now employed by PFG.

6.  Upon information and belief, Ms. Hall is a resident of Virginia and was employed by USF as a Territory Manager in Virginia from July 29, 1996 until her departure on September 3, 2010, and is now employed by PFG.

7.  Upon information and belief, Mr. Moreno is a resident of Virginia and was employed by USF as a Territory Manager in Virginia from May 23, 2000 until his departure on July 7, 2009, and is now employed by PFG.

8.  Upon information and belief, Mr. Shackley is a resident of Virginia and was employed by USF as a Territory Manager in Virginia from September 13, 2004 until his departure on September 3, 2010, and is now employed by PFG.

## JURISDICTION AND VENUE

9.  This Court has original jurisdiction over this action pursuant to the diversity of citizenship provisions contained in 28 U.S.C. §1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(a) because the Defendants reside in Virginia, Defendants transact business in Virginia, a substantial part of the

events giving rise to the claims occurred, and are occurring, in Virginia; and a substantial part of the harm to USF is occurring in Virginia, including but not limited to solicitation of USF's customers in this district.

## FACTUAL ALLEGATIONS

11. USF is one of the nation's premier foodservice distributors and provides food and related products and services to approximately 250,000 customers across the country.

12. USF provides these services through Divisions, which serve one or more states in a geographical region.

13. The separate Divisions compete for business in the food service industry with both regional and national competitors in a given geographical region.

14. The USF-Manassas Division is one such Division and it employs approximately 324 associates and services customers, including in the Northern Virginia area.

15. The USF-Roanoke Division is another such Division and it employs approximately 442 associates and services customers throughout the southern part of Virginia, including the Williamsburg area at issue in this action.

16. USF and PFG are direct competitors in the foodservice distribution industry in the highly competitive Commonwealth of Virginia.

17. USF has invested and continues to invest considerable resources to develop information, methods, and techniques to (a) set appropriate pricing, discounts and allowances to attract and maintain clients; (b) maintain, develop and nurture business relationships with customers and individuals; (c) learn customers' business and food service needs and preferences; (d) develop innovative solutions to meet clients' food service needs; (e) develop the most effective and appropriate route lists for sales employees; (f) market and sell product information;

(g) determine margins; and (h) select suppliers.

18. The information described in the prior paragraph is valuable, confidential and proprietary to USF, and is not known in the public domain.

19. USF services its customers through a network of sales representatives, known as Territory Sales Managers ("TM's" or "Territory Managers").

20. USF Territory Managers are USF's direct link to its customers.

21. As a Territory Manager, Defendants were responsible for selling food and non-food items to new and existing customers, for acquiring and developing customers and achieving sales and gross profit budget goals.

22. Territory Managers regularly meet with customers to assess their needs, determine how to provide the goods and services to their customers' satisfaction and work to enhance the company's relationship and goodwill with its customers.

23. Territory Managers employed by USF become inexorably and intimately knowledgeable regarding USF's customers and suppliers, customer needs and preferences pricing strategies, discounts and allowances, margins, route lists of sales employees, and marketing and product information.

24. Territory Managers are also responsible for creating goodwill for USF through personal contacts and business relationships with customers.

25. As employees of USF and through the use of its resources, Defendants had access and were exposed to the following confidential information relating to USF customers:

      a.      Identities of USF customers;

      b.      Identities of contact persons at USF customers who decide or have significant influence regarding which food service products and services they use.

      c.      The pricing structure USF uses for each customer (which varies by customer);

      d.    the purchases and account history of USF with customers; and

      e.    the particular idiosyncrasies of each customer/contact person including their preferences, likes, and dislikes regarding products, services, and selling techniques.

26. Prior to their employment with USF, the Defendants had no knowledge of USF's confidential information or trade secrets, i.e., the identities of USF customers and suppliers, its contacts of those customers and suppliers, pricing for various customers, its clients' needs and preferences, USF's pricing strategies, discounts and allowances, margins, route lists of sales employees, and marketing and product information.

27. The information described in the prior paragraphs is not otherwise obtainable from public sources and constitutes USF's confidential information and trade secrets.

28. The information described in the prior paragraphs has significant economic value to USF and would be of significant economic value to a competitor in the food service industry.

29. To protect its legitimate business interests with respect to the aforementioned information, USF requires that its sales employees, including Territory Managers, sign non-solicitation and non-disclosure agreements as a condition of employment.

30. Upon information and belief, the Defendants are now employed by PFG and have responsibility for calling on customers in the same territory in which they worked when they were employed with USF.

31. Upon information and belief, the positions and duties the Defendants currently hold with PFG are substantially similar to those they held with USF and they are currently working in the food service industry.

32. PFG is engaged in the food service industry and provides food service distribution.

33. Mr. Moreno resigned his employment with USF on July 7, 2009. By letter dated January 8, 2010, USF notified Mr. Moreno of his continuing duties and obligations to USF post-

employment, attaching a copy of his signed Agreement.

34. Mr. Cattell resigned his employment with USF on January 5, 2010. By letter dated January 7, 2010, USF notified Mr. Cattell of his continuing duties and obligations to USF post-employment, attaching a copy of his signed Agreement.

35. The remaining Defendants resigned their employment with USF within the last few weeks, and by letters dated September 13, 2010 to Ms. Cusick, September 3, 2010 to Mr. Shackley, September 3, 2010 to Ms. Hall and September 9, 2010 to Ms. Gosselin, these Defendants were reminded of their continuing duties and obligations to USF post-employment and were given a copy of their signed Agreement.

36. All of these letters stated, "As you know, during the period in which you were employed by the Company, you were provided access to confidential and proprietary information. You are prohibited from using or disclosing any such information for any purpose."

37. Furthermore, the letters mentioned the prohibition on solicitation of customers, "Additionally, for the period of time set forth in the attached Agreement, you are prohibited from, directly or indirectly, soliciting or selling to any customer or prospective customer of the Company with whom you had any contact or about whom you had access to any confidential information."

38. All of the Defendants signed identical Non-Solicitation and Non-Disclosure Agreements, Mr. Cattell on January 9, 2009, Ms. Cusick on December 5, 2008, Ms. Gosselin on January 9, 2009, Ms. Hall on January 9, 2009, Mr. Moreno on January 11, 2008 and Mr. Shackley on January 9, 2009.

39. Section 4 of the Agreement prohibits disclosure of confidential information:

> Non-Disclosure of Confidential Information. At no time, either during or after the termination of employment, shall Employee directly or indirectly obtain, disclose

7

or use for Employee or any Person, or aid others in obtaining, disclosing, or using any Confidential Information of the Company, other than as may be required in the performance of duties for and as authorized by the Company. All Confidential Information is and shall remain the sole property of the Company. The Company understands that under the current laws of certain states, restrictions on the use or disclosure of confidential information must be of a finite duration. Accordingly, the parties agree that should the law of such a state be applied to this Agreement, the restrictions on the use of Confidential Information that is not a trade secret (the restriction on the use or disclosure of which shall be unlimited by time) shall apply only for a period of two (2) years from the termination of Employee's employment with the Company, which period Employee acknowledges to be reasonable under the circumstances at the time of execution of the Agreement.[1]

40. Section 6 of the Agreement prohibits solicitation of restricted customers:

Non-Solicitation of Restricted Customers. (a) For the one (1) year period following the termination of Employee's employment with the Company, Employee shall not, directly or indirectly, (for Employee or any other Person, whether as an employee, owner, consultant, independent contractor, or in any other capacity) for the purpose of providing products or services competitive with those offered by the Company, solicit, market, service, contact, sell to or attempt to sell to any Person(s):

(1) to whom Employee sold products or services on behalf of the Company at any time during the Pre-Termination Period, including sales performed while Employee was in training or providing vacation or leave coverage for another Associate; or

(2) to whom the Company sold products or services and with whom Employee had contact on behalf of the Company in connection with such sale at any time during the Pre-Termination Period; or

(3) to whom the Company sold products or services at any time during the Pre-Termination Period and which sale was made through any Associate whom Employee directly or indirectly managed or supervised (at any

---

[1] Mr. Moreno's Agreement is substantially similar in substance although it also says, "Without limiting the foregoing, it is expressly understood and agreed that the Employee shall not, at any time during or after the termination of employment with the Company, directly or indirectly utilize any Confidential Information to attempt to persuade or solicit any Customer of the Company to cease to do business or to reduce the amount of business which any Customer of the Company has customarily done or contemplates doing with the Company or to initiate or expand its business with a competitor of the Company. It shall be a violation of this provision to obtain or use Confidential Information obtained from other current or former Company employees, except as set forth in this Section 4."

level of management or supervision); or

(4)     with regard to whom, at any time during the Pre-
Termination Period, Employee (or any Associate whom Employee directly or
indirectly managed or supervised, at any level of management or supervision): (i)
participated in the preparation of a written sales proposal or bid containing
Confidential Information to such Person on behalf of the Company; (ii)
participated in the setting of prices, margins, or credit terms for such Person(s) on
behalf of the Company; or (iii) used or received or created or reviewed any
Confidential Information relating to such Person(s) on behalf of the Company; or

(5)     who is, or functions as, a food broker or contract
management company or group purchasing organization or otherwise represents
one or more customers or negotiates on their behalf, and to whom or through
whom Employee or any Associate whom Employee directly or indirectly
managed or supervised (at any level of management or supervision) sold products
or services on behalf of the Company at any time during the Pre-Termination
Period.

(b)     For the one (1) year period following the termination of
Employee's employment with the Company, Employee shall not, directly or
indirectly, (for Employee or any other Person, whether as an employee, owner,
consultant, independent contractor, or in any other capacity) for the purpose of
providing products or services competitive with those offered by the Company,
solicit, market, service, contact, sell to or attempt to sell to any Person who is
controlled by or who controls the Person(s) identified in Section 6(a).  A
"Restricted Customer" is that and are those Person(s) identified in Section 6(a)
and 6(b) herein.

(c)     Examples of indirect solicitation, marketing, servicing, contacting,
selling to or attempting to sell to, include but are not limited to, providing
Confidential Information to a Person(s) regarding a Restricted Customer; advising
or encouraging a Restricted Customer to reduce or cease doing business with the
Company or to do business with a Person that provides products or services
competitive with the Company; switching or swapping sales, solicitation, or
service responsibility for a Restricted Customer with an employee of a Person that
is competitive with the Company; participating in the supervision or management
of any Person or employee of such Person, regardless of other intervening levels
of management or supervision, with regard to a Restricted Customer; participating
in the setting of prices, credit terms or margins for a Restricted Customer;
participating in developing and executing marketing and sales strategies and
decisions affecting a Restricted Customer; and receiving any person benefit
(present or future) in the event a Restricted Customer should do any business with
a Person.

41. Section 7 of the Agreement for all Defendants except Mr. Moreno prohibits

solicitation of USF employees:

> **Non-Solicitation of Company Employees**. For a period of one (1) year following Employee's termination of employment with the Company, Employee will not directly or indirectly, on behalf of Employee or for any other Person, entice, induce, encourage or solicit or attempt to entice, induce, encourage or solicit any individual then employed by the Company and with whom the Employee had work-related dealings as a co-employee of the Company to leave such employment with the Company (this provision is not intended to restrict communications addressed to the general public, such as advertising to fill open positions) nor will the Employee hire any such individual for any other Person during the same one-year period following the Employee's termination.

42. Section 7 of Mr. Moreno's Agreement prohibits solicitation of USF employees:

> **Non-Solicitation of Company Employees**. During Employee's employment and for the one (1) year period following the termination thereof, Employee will not, directly or indirectly, on behalf of Employee or for any other Person (other than the Company), entice, induce, cause, encourage or solicit, or attempt to hire, entice, induce, cause, encourage or solicit any employee of the Company (i) to leave the Company's employ; or (ii) to become employed by any Person competitive with or engaged in the Business of the Company.

43. The Agreement provides that "the obligations and restrictions imposed under this Agreement shall apply after the termination of employment, regardless of whether such termination is voluntary or involuntary, or is with or without cause or notice." (Ex. A at ¶1(e)).

44. By signing the Agreements, the Defendants agreed that if they breached any of the covenants they would pay for all USF's reasonable attorneys' fees and costs incurred by USF in enforcing this Agreement.

45. By virtue of their employment with USF, and the intimate knowledge of the confidential business information they derived therefrom, the Defendants took with them to PFG knowledge of USF's Confidential Information.

46. By letter dated September 7, 2010, USF formally notified PFG of Mr. Shackley's and Ms. Hall's post-employment obligations under their respective Agreements, which were attached

to the letter.

47. By letter dated September 30, 2010, USF also formally notified PFG of Ms. Gosselin's and Ms. Cusick's post-employment obligations under their respective Agreements, which were attached to the letter.

48. Before resigning from USF, Mr. Shackley took a vacation which commenced on June 27, 2010.

49. During Mr. Shackley's vacation, Mr. Shackley's calls were automatically forwarded to Chris Slavin, a USF manager.

50. During the time when Mr. Slavin was receiving Mr. Shackley's calls, Mr. Cattell called Mr. Shackley on the cell phone in Mr. Slavin's possession.

51. Mr. Cattell was prohibited by the Agreement from soliciting USF employees at this time.

52. This was not the first time that Mr. Cattell violated the Agreement.

53. On March 10, 2010, Mr. Cattell violated his agreement by contacting a healthcare facility, a USF client which Mr. Cattell had serviced while employed by USF.[2]

54. In response, USF sent a letter to PFG dated March 25, 2010, and PFG responded by letter dated March 25, 2010 stating that Mr. Cattell admitted to contacting this customer and PFG requested that Mr. Cattell no longer make such contact.

55. USF understood that Mr. Cattell would not further violate the Agreement and agreed to hold off from further enforcement actions at that time.

56. However, Mr. Cattell subsequently contacted then-USF employee Mr. Shackley, after

---

[2] For confidentiality reasons, the name of the current USF customers solicited by Defendants are not included in this Complaint, although Plaintiff will agree to disclose this information pursuant to a mutually agreeable Protective Order entered by the Court or otherwise under seal in an

which Mr. Shackley terminated his employment with USF and became employed by PFG.

57. During the time when Mr. Slavin was receiving Mr. Shackley's calls on or shortly after June 27, 2010, Mr. Moreno also called Mr. Shackley on the cell phone in Mr. Slavin's possession.

58. Mr. Moreno was prohibited by the Agreement from soliciting USF employees at this time.

59. In fact, by letter dated February 5, 2010, Mr. Moreno had previously been advised by USF that he was in direct violation of the Agreement because he had been soliciting USF Territory Managers to leave USF to work for PFG.

60. Nevertheless, Mr. Moreno thereafter contacted then-USF employee Mr. Shackley, after which Mr. Shackley terminated his employment with USF and became employed by PFG.

61. After departing USF and shortly before the filing of this Complaint, Mr. Shackley solicited a USF restaurant customer in Williamsburg, Virginia, leaving his new PFG business card with this customer, a USF customer who was part of Mr. Shackley's account while employed with USF.

62. After departing USF and shortly before the filing of this Complaint, Mr. Shackley and Mr. Cattell visited a hotel in Newport News and left their business cards from PFG.

63. Shortly after departing USF, Mr. Shackley created a Facebook page that he has used to connect with three current USF customers who were part of Mr. Shackley's account while employed with USF.

64. On or about September 30, 2010, Ms. Hall solicited a pancake house in Williamsburg, a USF customer who was part of Ms. Hall's account while employed with USF.

---

Amended Complaint.

65. On or about September 30, 2010, Ms. Hall solicited another pancake house in Williamsburg, Virginia, a USF customer who was part of Ms. Hall's account while employed with USF.

66. After departing USF and shortly before the filing of this Complaint, Ms. Gosselin solicited a pancake house in Williamsburg, Virginia, a USF customer who was part of Ms. Gosselin's account while employed with USF.

67. Since Ms. Cusick's departure, at least nine USF customers (Carwash Café, Ferebee's, Good Eats Café, Historical Lancaster Tavern, Indian Creek, Lively Market, The Mooring, The Oaks and River Market) have ceased doing business with USF and upon information and belief, have transferred their business to PFG. The companies were USF customers who were part of Ms. Cusick's account while employed with USF.

68. In addition, shortly before she left, Ms. Cusick informed Shawn Shreffler ("Mr. Shreffler"), a USF driver in the Manassas region, that PFG was hiring.

69. During Fiscal Weeks 33 through 36 of 2010, Ms. Cusick achieved sales for USF between $59,040 and $60,402.

70. The week after Ms. Cusick resigned, Fiscal Week 37, USF's sales in her region dropped dramatically to $33,300.

71. During Fiscal Week 38, USF's sales dropped to $17,915.

72. Following their separation from USF, the Defendants, upon information and belief, have used confidential information in furtherance of their employment relationship with PFG. In light of the competitive business in which both USF and PFG are engaged and the nature of the Defendants' positions with PFG, the Defendants' disclosure of USF's confidential and trade secret information is inevitable.

73. As a result of the Defendants' knowledge of USF's confidential business information, they were able to quote prices to customers that they knew were at or below USF's prices, allowing them to gain footholds with USF's customers.

74. Upon information and belief, the Defendants have realized earnings, commissions, and/or profits from using and disclosing confidential information and trade secrets in violation of their Agreements.

75. The Defendants' violation of their non-solicitation and non-disclosure obligations has caused and will continue to cause USF irreparable harm.

## COUNT I - BREACH OF CONTRACT
### (All Defendants except Mr. Moreno)

76. USF incorporates and realleges the paragraphs above as though fully set forth herein.

77. The Agreements signed by the Defendants are valid, binding, and enforceable contracts.

78. The Defendants' conduct as alleged herein constitutes a breach of the provisions of their respective Agreements.

79. Defendants have breached their respective Agreements in that they have violated their non-solicitation and non-disclosure obligations.

80. All conditions precedent necessary for the enforcement of the Agreement have been satisfied.

81. As a proximate result of Defendants' breach of their respective Agreements, USF has suffered, and will continue to suffer, harm as determined at trial or a pre-trial hearing.

## COUNT II - BREACH OF CONTRACT
### (Mr. Cattell and Mr. Moreno)

82. USF incorporates and realleges the paragraphs above as though fully set forth herein.

83. The Agreements signed by Mr. Cattell and Mr. Moreno are valid, binding, and enforceable contracts.

84. Mr. Cattell's and Mr. Moreno's conduct as alleged herein to solicit Mr. Shackley constitutes a breach of the provisions of his Agreement.

85. All conditions precedent necessary for the enforcement of the Agreement have been satisfied.

86. Mr. Cattell and Mr. Moreno have breached their Agreements in that they have violated their non-solicitation obligations by contacting Mr. Shackley.

87. As a proximate result of Mr. Cattell's and Mr. Moreno's breach of Agreement, USF has suffered, and will continue to suffer, harm as determined at trial or a pre-trial hearing.

## COUNT III – SPECIFIC PERFORMANCE
### (All Defendants except Mr. Moreno)

88. USF incorporates and realleges the paragraphs above as though fully set forth herein.

89. The Agreements signed by the Defendants are valid, binding, and enforceable contracts.

90. In the Agreements, Defendants are bound to comply with their non-solicitation and non-disclosure obligations.

91. All conditions precedent necessary for the enforcement of the Agreement have been satisfied.

92. Plaintiff is entitled to specific performance of Defendants' non-solicitation and non-disclosure obligations.

## COUNT IV - MISAPPROPRIATION OF TRADE SECRETS UNDER VIRGINIA TRADE SECRETS ACT
### (All Defendants except Mr. Moreno)

93. USF incorporates and realleges the paragraphs above as though fully set forth herein.

94. As a result of their employment with USF, the Defendants have had in their possession confidential information of USF concerning its customers' needs and preferences, customer and supplier lists, marketing and product information, pricing strategies and other proprietary information relating to USF's business, the disclosure and misappropriation of which poses a significant threat to USF's ongoing business in Virginia.

95. Defendants accessed this information while employed by USF under a duty to maintain the secrecy of that information and to limit their use.

96. USF has made reasonable efforts to maintain the confidentiality of such information.

97. USF's confidential information, including, but not limited to, customer and supplier lists and data, has actual and potential independent and economic value to USF and is not generally known to nor readily ascertainable by USF's competitors.

98. USF's confidential information was developed by USF and constitutes "trade secrets" within the meaning of Virginia's Trade Secrets Act.

99. This Court has jurisdiction to enjoin the actual or threatened misappropriation of USF's trade secrets and is authorized to award damages for such misappropriation.

100.    Upon information and belief, the Defendants have used and disclosed, and will continue to use and disclose, and their employment with PFG makes it inevitable that they will disclose USF's trade secret information to assist their new employer in competing with USF for business.

101.    As a result of the Defendants' conduct, USF has suffered, and will continue to

suffer, harm as determined at trial or a pre-trial hearing.

## COUNT V - TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND PROSPECTIVE ECONOMIC ADVANTAGE
### (All Defendants except Mr. Moreno)

102.    USF incorporates and realleges the paragraphs above as though fully set forth herein.

103.    USF had and has a valid and enforceable contracts and business expectancies with its customers in Virginia, of which Defendants had and have knowledge.

104.    Based on the acts of Defendants alleged herein, Defendants tortiously interfered and are continuing to tortiously interfere with the Agreements.  Despite knowledge of the customer contracts and business expectancies, Defendants acted with malice and improper means intending to cause termination of those relationships, and have acted with malice proximately causing damages to USF.

105.    Upon information and belief, the Defendants have intentionally, maliciously, and without justification acted to deprive USF of its existing business relationship by employing wrongful means, including misusing USF's confidential information and otherwise violating their continuing duties to USF.

106.    As a proximate consequence of this tortious interference, USF has suffered harm as determined at trial or a pre-trial hearing, and Defendants have been unjustly enriched.

## COUNT VI - CONVERSION
### (All Defendants except Mr. Moreno)

107.    USF incorporates and realleges the paragraphs above as though fully set forth herein.

108.    Plaintiff USF is the rightful owner of its proprietary customer information,

17

including but not limited to its customer pricing strategies, customer support data, and history of customer preferences.

109.    Defendants have retained and converted for their own use and benefit certain confidential information belonging to USF, including, among other things, the identities of USF customers and suppliers, its contacts of those customers and suppliers, pricing for various customers, its clients' needs and preferences, USF's pricing strategies, discounts and allowances, margins, route lists of sales employees, and marketing and product information. .

110.    USF believes that the Defendants have derived a substantial profit or other revenues through their misuse of USF's confidential and proprietary information.

111.    As a proximate consequence of this conversion, USF has suffered harm as determined at trial or a pre-trial hearing, and Defendants have been unjustly enriched.

## COUNT VII – BREACH OF DUTY OF LOYALTY
### (All Defendants except Mr. Moreno)

112.    USF incorporates and realleges the paragraphs above as though fully set forth herein.

113.    The Defendants owed a common law duty of loyalty to USF, which continued after they left USF at least with respect to USF's confidential information.

114.    Through their actions described herein, the Defendants have breached their duty of loyalty to USF, and have done so with reckless indifference to the consequences and with conscious disregard for USF's best interests.

115.    As a proximate consequence of this breach of the duty of loyalty, USF has suffered harm as determined at trial or a pre-trial hearing.

## COUNT VIII – BREACH OF FIDUCIARY DUTY
### (All Defendants except Mr. Moreno)

116.    USF incorporates and realleges the paragraphs above as though fully set forth herein.

117.    While they were employed by USF, the Defendants occupied fiduciary relationships with USF.

118.    The Defendants owed fiduciary duties to USF, which continued after they left USF. These duties included, but were not limited to, the duty to act honestly and with the utmost good faith toward USF, the duty to act at all times in USF's best interests, the duty not to misuse, misappropriate or disclose USF's Confidential Information, the duty to refrain from competing with USF, the duty to refrain from soliciting USF's clients for themselves or PFG, and the duty to refrain from soliciting, recruiting and hiring USF's employees away from USF.

119.    Through their actions described herein, the Defendants have breached their fiduciary duties to USF, and have done so with reckless indifference to the consequences and with conscious disregard for USF's best interests.

120.    As a proximate consequence of this breach of the duty of loyalty, USF has suffered harm as determined at trial or a pre-trial hearing.

## COUNT IX - EQUITABLE ACCOUNTING
### (All Defendants except Mr. Moreno)

121.    USF incorporates and realleges the paragraphs above as though fully set forth herein.

122.    Defendants have breached their Agreements based on the conduct described herein.

123.    USF believes that the Defendants have derived a substantial profit or other revenues through their misuse of USF's confidential and proprietary information.

124.    USF requests an accounting of revenues generated, directly or indirectly, by the

Defendants based on their violation of their Agreements.

## STATEMENT OF IRREPARABLE INJURY TO PLAINTIFF

125.    USF has been and continues to be subjected to irreparable injury for which no remedy at law exists.

126.    There exists a real, present and continuing threat that, absent the relief sought herein, Defendants will continue to disclose USF confidential business information and continue to exploit USF customer relationships.

127.    Given the fierce competition in the food service industry and the sales and revenue at stake, the unlawful actions by the Defendants, and those acting in concert with them, are causing and will continue to cause great and irreparable harm to USF's business which cannot be adequately remedied by an award of monetary damages.  The actions described herein are causing and will continue to cause USF harm and irreparable damage insofar as that conduct interferes with USF's established business relationships and providing staffing services to customers and prospective customers, interferes with USF's business opportunities, and damages USF's reputation, goodwill and competitive position.  USF will continue to suffer such injury unless the Defendants, and persons acting in concert with them, are restrained and enjoined from continuing the unlawful conduct and from breaching the provisions of their Agreements.

## PRAYER FOR INJUNCTIVE RELIEF AND DAMAGES

WHEREFORE, USF demands the following:

a.    injunctive relief requiring the Defendants to comply with the obligations in their Agreements, including the non-solicitation and non-disclosure provisions, and preventing the Defendants from interfering with its employee and customer relationships;

b.      an accounting for and payment of any compensation, commission, bonus, salary, gratuity, emolument, or other gain received, directly or indirectly, by the Defendants in any transaction connected with the breach of the Agreements;

c.      an order compelling the Defendants to return any of USF's confidential and trade secret information in their possession, custody or control;

d.      punitive damages, pursuant to common law;

e.      actual and compensatory damages in an amount to be established at trial, if applicable;

f.      costs and reasonable attorneys' fees, as appropriate; and

g.      such other and further relief as this Court may deem proper.

US FOODSERVICE, INC.
By counsel

_____
Attison L. Barnes, III (Va. Bar No. 30458)
WILEY REIN LLP
1776 K Street, N.W.
Washington, DC  20006
Telephone:  (202) 719-7000
Facsimile: (202) 719-7385
abarnes@wileyrein.com

Counsel for Plaintiff U.S. Foodservice, Inc.

Dated: October 1, 2010